UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/17/2023
```

-------------------------------------------------------------------X
:
KWAINE THOMPSON,                                              :
                                    Plaintiff,               :
                                                             :
                    -against-                                :        21-CV-10371 (VEC)
                                                             :
                                                             :        OPINION & ORDER
WARDEN RENEE, CAPT. CARTER, and CITY OF                      :
NEW YORK,                                                    :
                                                             :
                                    Defendants.              :
                                                             :
-------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

    Plaintiff Kwaine Thompson, proceeding *pro se*, sued Defendants pursuant to 42 U.S.C.

§ 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") for

various harms allegedly experienced while he was incarcerated on lockdown status at Rikers

Island. *See* Am. Compl., Dkt. 25. Defendants moved to dismiss, Mot., Dkt. 41, and Plaintiff

opposed the motion and moved for summary judgment, Pl. Opp., Dkt. 55; Pl. Second Opp., Dkt.

61. For the reasons discussed below, Defendants' motion to dismiss is GRANTED except as to

Plaintiff's claims that Defendants violated (i) the Eighth Amendment by failing to treat his mpox

infection, (ii) the First Amendment and RLUIPA by denying him access to religious

congregations, and (iii) the Equal Protection Clause by discriminatorily denying him access to a

Quran; Plaintiff's motions for summary judgment are DENIED without prejudice.

## BACKGROUND[1]

Mr. Thompson was placed under court-ordered lockdown while detained at Rikers Island. Pl. Second Opp. at 1.[2]  The lockdown orders prohibit him from making telephone calls to anyone other than his attorney and authorize the Department of Corrections to enforce the orders by placing him on 23-hour lockdown.  *See* Defs. Letter Ex. 1 ("Nov. 2019 Order"), Dkt. 63; Defs. Letter Ex. 3 ("Oct. 2021 Order"), Dkt. 63; Defs. Letter Ex. 4 ("Nov. 2022 Order"), Dkt. 63.[3]

Mr. Thompson, who is a lifelong Muslim, alleges that Defendants deprived him of his ability to attend religious congregations, receive counseling from an imam, possess a Quran, and exercise while he was on lockdown; he also alleges that Defendants were deliberately indifferent to certain of his medical needs.  *See* Am. Compl. ¶¶ 16–17, 23; Pl. Second Opp. at 3, 28–29, 33.

## DISCUSSION

### I.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual

---

[1]     The well-pled facts in the Amended Complaint are assumed true for purposes of evaluating Defendant's motion to dismiss.  *See Nielsen v. Rabin*, 746 F.3d 58, 61 (2d Cir. 2014).  The Court also affords Plaintiff, who is proceeding *pro se* "special solicitude" by interpreting his complaint, filed pro se, "to raise the strongest claims that it suggests."  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

[2]     Plaintiff's second opposition brief contains several exhibits in the middle of the brief; accordingly, the Court uses page numbers corresponding to ECF pagination as opposed to the brief's internal pagination in all citations to Plaintiff's second opposition brief.  *See* Pl. Second Opp., Dkt. 61.

[3]     The Court considers the lockdown orders filed by Defendants on the public docket because they are public documents that Plaintiff referenced in his filings.  *See Akran v. United States*, 997 F. Supp. 2d 197, 203 (E.D.N.Y. 2014) (noting that courts may take judicial notice of public documents on the record, such as court orders) (collecting cases).

allegation.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

"[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or

elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above

the speculative level."  *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation

omitted).

## II.     Plaintiff's Filings

After timely filing his first amended complaint, Mr. Thompson filed several motions to

further amend his complaint; Magistrate Judge Moses, to whom the case had been referred at that

time, denied those motions on July 28, 2022.  *See* Order, Dkt. 50.

On July 15, 2022, Magistrate Judge Moses extended Plaintiff's time to respond to

Defendants' motion to dismiss to August 25, 2022.  Order, Dkt. 44.  In a one-page letter dated

August 15, 2022, Plaintiff opposed Defendants' motion to dismiss and purported to move for

summary judgment.[4]  Letter, Dkt. 55.

On October 5, 2022, Plaintiff filed a second opposition brief; that brief arrived more than

a month after Plaintiff's deadline to submit an opposition brief and after Defendants had

submitted their reply.[5]  *See* Pl. Second Opp.; Defs. Reply, Dkt. 57.  Mr. Thompson did not seek

permission from Magistrate Judge Moses to file additional briefing past the August 25, 2022,

deadline.

The Court may, but is not required, to consider new factual allegations raised in

Plaintiff's improperly filed opposition brief.  *See Atadzhanov v. City of New York*, No. 21-CV-

---

[4]     The summary judgment motion was limited to Plaintiff writing: "This is my [motion] for Plaintiff to be
granted summary judgment."  Dkt. 55.  There was no memorandum of law in support and no statement as required
by Local Civil Rule 56.1.

[5]     Plaintiff again purported to move for summary judgment.  *See* Pl. Second Opp. at 23.

5098, 2022 WL 4331304, at *1 (S.D.N.Y. Sept. 19, 2022) (exercising the Court's discretion to consider new factual allegations brought by the *pro se* plaintiff in his opposition brief and sur-reply).  In light of Plaintiff's *pro se* status, the Court will consider the new allegations made in Plaintiff's second opposition to the extent they are consistent with and relate to the allegations in the Amended Complaint.[6]  *See George v. Pathways to Hous., Inc.*, No. 10-CV-9505, 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012).  Plaintiff is warned, however, that as of this order, the referral to Magistrate Judge Moses is reinstated, and Mr. Thompson must scrupulously adhere to deadlines set by Magistrate Judge Moses.[7]

### III.    Defendants' Motion to Dismiss All Claims Against Warden Renee and Captain Carter Is Granted

To state a claim against Warden Renee and Captain Carter pursuant to section 1983 or RLUIPA, Mr. Thompson must plausibly establish that they had some personal involvement in the events described in his amended complaint and opposition papers.  *See Alvardo v. Westchester Cnty.*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014); *Vann v. Fischer*, No. 11-CV-1958, 2012 WL 2384428, at *5 (S.D.N.Y. June 21, 2012).  Plaintiff cannot hold Warden Renee and Captain Carter liable for the actions of employees under their supervision because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.

---

[6]    The second opposition brief attaches copies of numerous administrative complaints regarding events that were not discussed in the Amended Complaint or the opposition brief.  *See* Pl. Second Opp. Exs. 3–8.  To the extent that Mr. Thompson seeks to rely on copies of the administrative complaints to sue Defendants for the conduct described in those complaints, he must file a new complaint raising those claims.  Any such complaint would need to include factual allegations beyond those that appear in the administrative complaints, however; the administrative complaints do not contain sufficient information to "nudge [his] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[7]    "*Pro se* status does not excuse a party from meeting deadlines by the Court to file an opposition."  *Elliot v. Nestle Waters N. Am. Inc.*, No. 13-CV-6331, 2014 WL 1795297, at *6 (S.D.N.Y. May 6, 2014) (cleaned up).

Mr. Thompson has not plausibly alleged that either Warden Renee or Captain Carter was personally involved in the alleged misconduct. *See Styles v. Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) (holding that plaintiffs must plead defendants' personal involvement to state a section 1983 claim). For example, Mr. Thompson alleges that Captain Carter violated the Victims of Gender-Motivated Violence Protection Act without describing any gender-motivated violence in which Captain Carter engaged. *See* Am. Compl. ¶ 49. Similarly, Plaintiff alleges that "Captain Carter/Warden Renee retaliated when the[y] took my family visits on June 15, 2022 all because I sued them" without alleging any facts to allow the Court to conclude that the decision to cancel Plaintiff's June 15, 2022, family visit was made by Captain Carter or Warden Renee or that any such decision was based on a retaliatory motive. Pl. Second Opp. at 4. Plaintiff also alleges that Warden Renee and Captain Carter did not provide staff to escort him to medical facilities so that he could receive necessary medical care, to Jumu'ah, or to the yard for recreation without pleading any facts from which the Court could plausibly infer that either Warden Renee or Captain Carter was involved in any of those decisions. Am. Compl. ¶¶ 3, 23.

While Mr. Thompson submitted copies of letters that were allegedly transmitted to the warden, courts have repeatedly held that the mere fact that a prison official has received letters from an inmate does not establish his or her personal involvement in action or inaction following receipt of the correspondence. *See, e.g.*, *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Thompson v. New York*, No. 99-CV-9875, 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001).

Because Mr. Thompson has failed to state a claim against Warden Renee and Captain Carter, Defendants' motion to dismiss all claims against them is granted.

**IV.    Defendants' Motion to Dismiss Plaintiff's Claim that His Eighth Amendment Rights Have Been Violated Because He Has Not Been Allowed to Exercise Is Granted**

The Second Circuit has repeatedly recognized that the Eighth Amendment requires inmates to be afforded "some opportunity for exercise." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996).  Mr. Thompson alleges that Defendants violated his right to exercise by not taking him to "his allotted 1 hour daily recreation yard requirement" and kept him in restraints during his recreation period.  Am. Compl. ¶ 34; *see also* Pl. Second Opp. at 32.  These allegations are insufficient to state a claim for an Eighth Amendment violation.

The right to exercise "does not require any particular form of recreational privileges." *West v. City of New York*, No. 13-CV-5155, 2014 WL 4290813, at *5 (S.D.N.Y. Aug 28. 2014). In determining whether an inmate has been denied the right to exercise, courts examine "(1) the duration of the deprivation; (2) the extent of the deprivation; (3) the availability of other out-of-cell activities; 4) the opportunity for in-cell exercise; and (5) the justification for the deprivation." *Williams v. Goord*, 142 F. Supp. 2d 416, 425 (S.D.N.Y. 2001) (internal citations omitted).

While Mr. Thompson alleges that he has been kept on court-ordered lockdown for twenty-three hours a day, *see* Pl. Second Opp. at 9–12, he alleges no facts suggesting that he was denied the opportunity to exercise indoors or denied the ability to exercise in the yard for an extended period of time.  *See, e.g.*, *West*, 2014 WL 4290813, at *5 (dismissing right to exercise claim where plaintiff did not allege, *inter alia*, the unavailability of other out-of-cell activities or the opportunity for in-cell exercise).  Mr. Thompson attached to his second opposition brief a copy of a disposition form from the Department of Correction that states that Mr. Thompson did

6

not receive mandatory "service recreation" from January 1, 2022, through January 9, 2022.  Pl.
Second Opp. Ex. 3.  Denying Mr. Thompson's access to out-of-cell exercise for ten days,
however, does not rise to the level of a violation of the Eighth Amendment.  *See Davidson v.*
*Coughlin*, 968 F. Supp. 121, 132 (S.D.N.Y. 1997) (collecting cases finding that preventing an
inmate's access to out-of-cell exercise for more than two weeks was not a constitutional
violation).

Nor does the fact that Mr. Thompson was allegedly placed in restraints when he was
provided recreation by itself violate the Eighth Amendment.  *See* Pl. Second Opp. at 32.  Courts
have repeatedly held that the Eighth Amendment does not require an inmate to be free of
restraints during recreation so long as he can exercise with the restraints or exercise within his
cell.  *See Williams*, 142 F. Supp. 2d at 426; *see also Dabney v. McGinnis*, No. 97-CV-489, 2006
WL 1285625, at *4 (W.D.N.Y. May 9, 2006) (collecting cases).  Mr. Thompson has not alleged
that the restraints prevented him from engaging in any exercise or that he could not exercise in
his cell.

Accordingly, Defendants' motion to dismiss Plaintiff's claim that his Eighth Amendment
rights were violated because he was denied the right to exercise is granted.

V. **Defendants' Motion to Dismiss Plaintiff's Claim that His Eighth Amendment
Rights Were Violated by Defendants' Deliberate Indifference to His Medical
Needs Is Granted in Part and Denied in Part**

The Eighth Amendment "imposes a duty upon prison officials to ensure that inmates
receive adequate medical care."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing
*Farmer v. Brennan*, 511 U.S. 825, 832, 844 (1994)).  To state an Eighth Amendment deliberate
indifference claim, Plaintiff must allege that (1) his medical condition was objectively serious
and (2) Defendants subjectively acted recklessly in disregarding the substantial risk of harm to

him in failing to provide adequate medical treatment. *See Garcia v. Fisher*, No. 13-CV-8196, 2016 WL 297729, at *4–5 (S.D.N.Y. Jan. 22, 2016).

"A condition is sufficiently serious [to form the predicate of a deliberate indifference claim] if it may cause death, degeneration, or extreme pain, or if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id*. at *4 (cleaned up). In evaluating the seriousness of a condition for which Plaintiff alleges he did not receive any medical care, courts consider "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin*, 467 F.3d at 280 (cleaned up). If, however, treatment has been provided and Plaintiff challenges "an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment." *Id*. (cleaned up).

To satisfy the subjective component, Plaintiff must allege facts that allow the Court plausibly to infer that Defendants' conduct was more than merely negligent or constituted medical malpractice. *Charles v. Orange Cnty.*, 925 F.3d 73, 86–87 (2d Cir. 2019) (citation omitted). Rather, Plaintiff must allege facts from which the Court can plausibly infer that Defendants "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [Defendants] knew, or should have known, that the condition posed an excessive risk to plaintiff's health or safety." *Id*. at 87 (cleaned up).[8]

---

[8]     Although Plaintiff's deliberate indifference claim is brought pursuant to section 1983, qualified immunity will not shield Defendants from liability if Plaintiff "is able to prove that [D]efendants acted with deliberate indifference," and thus, Defendants did not believe their actions were lawful. *Lloyd v. Lee*, 570 F. Supp. 2d 556, 570 (S.D.N.Y. 2008).

### A. Allegations in the Amended Complaint

The Amended Complaint alleges that Defendants have been deliberately indifferent to Plaintiff's medical needs and that he has numerous ailments, including "priapism, asthma attacks, stomach pains [and a] sore back." Am. Compl. ¶ 17. The Amended Complaint pleads no facts about Mr. Thompson's efforts to seek treatment for those conditions other than that conclusory statement that might allow the Court to infer that he was "actually deprived of adequate medical care." [9] *Salahuddin*, 467 F.3d at 279. To the contrary, Mr. Thompson acknowledges that he received medical care at his cell. *See* Am. Compl. ¶ 34.

Accordingly, Defendants' motion to dismiss the portion of Plaintiff's deliberate indifference claim that rests on his allegations that Defendants were deliberately indifferent to his medical needs stemming from "priapism, asthma attacks, stomach pains [and a] sore back" is granted. *Id.* ¶ 17.

### B. Smoke Inhalation

In a filing submitted as part of his second opposition brief that is styled as a motion for summary judgment, Mr. Thompson alleges that he was improperly denied medical care when prison staff refused to take him to the clinic for injuries stemming from smoke inhalation. Pl. Second Opp. at 28–29. The Court reiterates that a motion for summary judgment is premature at this stage, but the Court will consider Plaintiff's claims regarding smoke inhalation in light of his *pro se* status.

Mr. Thompson alleges that he experienced chest pain, worsened asthma, and deteriorating mental health after "thick smoke fumes" from a fire set in a different building

---

[9]     Plaintiff represented that he was submitting his medical records to the Court but he has failed to do so. Pl. Second Opp. at 3.

traveled to his cell. *Id*. These symptoms are not sufficiently severe to support a claim to an Eighth Amendment violation. In *Garcia v. Fischer*, the court held that inmates who were "exposed to thick black smoke" for four hours, 2016 WL 297729, at \*6, failed to state a claim to constitutionally-inadequate medical care based on symptoms similar to Plaintiff's, including chest pain, shortness of breath, anxiety, and worsened asthma, *id*. at \*3, \*8.

Accordingly, Defendants' motion to dismiss the portion of Plaintiff's deliberate indifference claim premised on Defendants providing inadequate medical care for ailments caused by smoke inhalation is granted.

### C. Mpox

Mr. Thompson alleges that he contracted the mpox virus, formerly known as the monkeypox virus, on July 23, 2022, and Defendants did not vaccinate, test, or treat him even though Mr. Thompson "implored them to do so." [10] Pl. Second Opp. at 2–3. He further alleges that the New York Supreme Court ordered Defendants to test him for mpox, but Defendants did not do so. *Id*. at 4. Although Plaintiff alleges that Defendants did not take him to the clinic, he also states that he "went to the clinic over 50 times complaining" about mpox.[11] *Id*. at 3.

---

[10] Plaintiff asserts that, as of the filing of his second opposition brief, he continued to suffer from mpox. Pl. Second Opp. at 3. At the motion to dismiss stage, the Court must accept that allegation as true, but the Court is quite surprised that Plaintiff continued to suffer from mpox two months after contracting the virus; scientific literature indicates that the mpox rash typically resolves in two to four weeks. *See What to Do if You Are Sick*, CDC (Jan. 26, 2023), https://www.cdc.gov/poxvirus/mpox/if-sick/what-to-do.html.

[11] Plaintiff first raised this deliberate indifference claim in a motion to amend the complaint that Magistrate Judge Moses denied. Pl. Aug. 10, 2022, Letter, Dkt. 53 at 14; Order, Dkt. 50. Defendants opposed the motion to amend because Mr. Thompson failed administratively to exhaust his remedies as he had not filed an administrative complaint and the proposed amended complaint was submitted within the twenty-one-day window during which courts presume the administrative redress process is ongoing. Defs. Reply, Dkt 57 at 3–4; *see also Miller v. Annucci*, No. 17-CV-4698, 2019 WL 4688539, at \*12 (S.D.N.Y. Sept. 26, 2019) (noting that courts presume an inmate has not exhausted his administrative remedies if the complaint is filed within 21 days of the alleged incident). Plaintiff's second opposition brief, however, contains a copy of an administrative complaint filed more than twenty-one days before the opposition brief was filed. *See* Pl. Second Opp. Ex. 5. That is sufficient at the motion to dismiss stage, as Plaintiff does not carry the burden of pleading that he exhausted the available administrative remedies. *See Miller*, 2019 WL 4688539, at \*12. Given his status as a pro se litigant, the Court will deem his complaint to have been amended to allege deliberate indifference to his need for medical care for mpox.

The Court finds that mpox is a sufficiently serious condition to satisfy the objective requirement of Plaintiff's deliberate indifference claim. Plaintiff alleges that he suffered from "rashes and blisters, headaches, chills, [and] fever[] for months." Pl. Second Opp. at 4. Undoubtedly, a reasonable doctor would find that these symptoms were "worthy of comment or treatment." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (internal quotation omitted). While a skin rash is generally insufficiently serious to constitute a serious medical need, *see Lewal v. Wiley*, 29 F. App'x 26, 29 (2d Cir. 2002), it is well-documented that mpox frequently causes pain and lesions sufficiently severe to preclude the infected person from carrying out his daily activities.[12] Conditions causing fever and pain severe enough to infringe upon daily life are objectively serious. *See Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998) (collecting cases); *Hardy v. City of New York*, 732 F. Supp. 2d 112, 132, 137 (E.D.N.Y. 2010).

At this stage, Mr. Thompson has alleged enough facts to satisfy the subjective component of his deliberate indifference claim by alleging that Defendants were "actually aware" of his medical needs, which were acute. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). He alleges that he repeatedly reported his symptoms, filed an administrative complaint regarding Defendants' failure to provide adequate testing or treatment, and successfully petitioned for a court order requiring Defendants to test and treat him. Pl. Second Opp. 3–4. There is no question that the risk posed by untreated mpox is severe. While many who contract mpox recover on their own, failure to treat monkeypox may result in the "degeneration or extreme pain" that the Eighth Amendment was designed to guard against, including substantial

---

[12]   *See, e.g.*, *Clinical Considerations for Pain Management of Mpox*, CDC (Oct. 21, 2022), https://www.cdc.gov/poxvirus/mpox/clinicians/pain-management.html.

complications such as disfigurement and, in rare cases, death.[13]  *Chance*, 143 F.3d at 702
(cleaned up); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (holding that denial of
medical care is unconstitutional where it causes "pain without any penological purpose").

For the foregoing reasons, Defendants' motion to dismiss is denied as to Plaintiff's
deliberate indifference claim as it relates to diagnosing and treating him for mpox.  Mr.
Thompson may pursue both injunctive relief and damages in light of the alleged physical injury
caused by Defendants' failure to treat his mpox infection.  *See Rhaman v. Schriro*, 22 F. Supp.
3d 305, 317–18 (2014) (noting that the Prison Litigation Reform Act permits prisoners to sue for
damages based on claims of physical injury); *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir.
2002) (same).

## VI.     Defendants' Motion to Dismiss Plaintiff's Religious Liberty Claims Is Granted in Part and Denied in Part

"[A]lthough prisoners do not abandon their constitutional rights at the prison door . . . the
considerations underlying our penal system" often require some limitation on those rights.
*Salahuddin*, 467 F.3d at 274 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).
Accordingly, courts evaluate inmates' free exercise claims "under a reasonableness test less
restrictive than that ordinarily applied."  *Id.* (cleaned up).  "The prisoner must show at the
threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."  *Id.*
at 274–75 (citation omitted).  Even if Plaintiff makes that threshold showing, his claims must be
dismissed if Defendants carry their "relatively limited burden of identifying the legitimate
penological interests that justify the impinging conduct . . . ."  *Id.* at 275.

---

[13]      *See* Pritish K. Tosh, M.D., *Monkeypox: What Is It and How Can It Be Prevented?*, Mayo Clinic (Dec. 1, 2022), https://www.mayoclinic.org/diseases-conditions/infectious-diseases/expert-answers/monkeypox-faq/faq-20533608.

Mr. Thompson alleges that Defendants' failure to take him to religious services, bring an imam to his cell, and provide him a copy of the Quran violate the Free Exercise Clause of the First Amendment to the United States Constitution and RLUIPA. *See* Am. Compl. ¶ 15; Pl. Second Opp. at 1–2. For the reasons discussed below, the Court grants Defendants' motion to dismiss all of Plaintiff's religious liberty claims except his claims that Defendants impermissibly denied him access to a Quran and religious congregations; Plaintiff may seek injunctive relief as to these claims.[14]

## A. Religious Congregations

Mr. Thompson alleges that he was not permitted to attend Jumu'ah, "a weekly Muslim congregational service," on Fridays because of the restrictions imposed by the state court lockdown order. Am. Compl. ¶ 16; *O'Lone*, 482 U.S. at 345 (holding that prison regulations preventing plaintiffs from attending Jumu'ah did not violate the Free Exercise Clause). In his August 11, 2022, letter, Mr. Thompson also alleges that he was deprived of his right "to pray in the congregation on Eid Adhaa [sic]." Pl. Aug. 11, 2022, Letter, Dkt. 54. Defendants appear to concede that Plaintiff was not allowed "to participate in Jum'ah [sic] services," which they attribute to his court-ordered lockdown status. Defs. Mem., Dkt. 42 at 3; *see also* Defs. Reply at 3.

Mr. Thompson adequately alleges that he sincerely believes that he must pray in congregational services during Jumu'ah and Eid al-Adha. Mr. Thompson states that Jumu'ah prayers "can not [sic] be made inside a cell," Am. Compl. ¶ 16, and that "[i]t is unislamic to perform Eid Adhaa by yourself," Pl. Aug. 11, 2022, Letter. Because the sincerity of a religious

---

[14]     Mr. Thompson cannot recover monetary damages for his religious liberty claims because he alleges only mental or emotional harm. "RLUIPA does not offer monetary damages . . . ," *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 589 (S.D.N.Y. 2015) (collecting cases), and monetary damages for mental or emotional suffering are not available to prisoners under section 1983, 42 U.S.C. § 1997e(e).

belief is a highly fact-intensive inquiry, it is sufficient at the motion to dismiss stage to allege, as

Mr. Thompson has done, that the plaintiff practices the religion and believes that his religious

duty compels him to perform the conduct the prison prohibits.  *See Washington v. Gonyea*, 538

F. App'x 23, 26 (2d Cir. 2013); *see also Johnson v. Doty*, No. 15-CV-7823, 2019 WL 2137361,

at *4 (S.D.N.Y. May 16, 2019) (holding that plaintiff had adequately alleged the sincerity of his

religious beliefs by stating that, *inter alia*, he was a devout Muslim and Eid al-Adha prayers were

required to be performed in a group).

Defendants argue that the burden on Mr. Thompson's sincerely held religious beliefs is

constitutionally permissible because it is justified by the valid penological interest in enforcing

Mr. Thompson's lockdown order.  Mr. Thompson's lockdown order requires Defendants to

prevent him, "by any means necessary, including 23 hour lockdown," from making telephone

calls to anyone other than his attorney.  *See, e.g.*, Nov. 2019 Order at 1.

Restrictions imposed to comply with a state court lockdown order "are presumptively

valid, at least insofar as the restrictions are consistent with the state court's Lockdown Order."

*Anduze v. City of New York*, No. 21-CV-519, 2022 WL 4586967, at *8 (S.D.N.Y. Aug. 8, 2022),

*report and recommendation adopted*, 2022 WL 4547420 (S.D.N.Y. Sept. 29, 2022); *see also*

*Forrest v. City of New York*, No. 21-CV-10152, 2023 WL 2432493, at *8 (S.D.N.Y. Feb. 1,

2023), *report and recommendation adopted*, 2023 WL 2433115 (S.D.N.Y. Mar. 9, 2023).

At this stage, Defendants have not demonstrated that compliance with the lockdown

order prevented them from allowing Mr. Thompson to attend religious congregations.  *See*

*Anduze*, 2022 WL 4586967, at *19 (denying motion to dismiss constitutional claims brought

against overbroad restrictions purportedly enacted to enforce a state court lockdown order).  This

case stands in contrast to cases like *Forrest v. City of New York*.  In *Forrest*, the Court held that a

14

state court lockdown order requiring the inmate to be separated from other inmates justified defendants' decision to preclude plaintiff from attending group religious services. *See* 2023 WL 2432493, at \*8. In this case, Mr. Thompson's lockdown orders only prevent him from making telephone calls; the order does not require him to be separated from other inmates. *See* Nov. 2019 Order at 2; Oct. 2021 Order at 1–2; Nov. 2022 Order at 1–2.

Whether Defendants can prove that they could not reasonably enforce the "no phone call" order if they allowed Mr. Thompson to attend religious services remains to be seen. But for purposes of a motion to dismiss, the lockdown order itself does not provide a legitimate penological reason for denying Mr. Thompson access to religious congregations. *Cf. Hunter v. City of New York*, No. 10-CV-3532, 2015 WL 5697218, at \*9 (S.D.N.Y. Sept. 28, 2015) (finding that compliance with a state court lockdown order necessitated restricting plaintiff's access to religious congregations although the lockdown order did not expressly impose that restriction). Accordingly, Defendants' motion to dismiss Mr. Thompson's claim for injunctive relief permitting him to attend congregational services is denied.

### B. Access to an Imam

The Amended Complaint alleges that, in addition to refusing to take Plaintiff to Jumu'ah services, Defendants refused to escort an imam to Plaintiff's housing unit "on Jumah [sic] Fridays." Am. Compl. ¶ 3. Plaintiff's allegations concerning his inability to access to an imam are entirely conclusory and do not, for example, include any allegations that would allow the Court plausibly to infer that he ever asked to see an imam. *See id*. ¶¶ 3, 16; *Brown v. City of New York*, No. 14-CV-188, 2015 WL 374935, at \*3 (S.D.N.Y. Jan. 29, 2015) (dismissing inmate's claim that he was denied access to an imam because plaintiff did not allege that he requested to see an imam or who denied those requests).

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment and RLUIPA claims based on Defendants' alleged denial of access to an imam is granted.

### C. Access to a Quran

Mr. Thompson adequately alleges that his sincerely held religious belief requires him to have access to the Quran; he alleges that he believes possession of the Quran is necessary to practice Islam, which he has done all his life. Pl. Second Opp. at 24; Am. Compl. ¶ 17. He further alleges that when he attempted to obtain a Quran, Defendants told him that he could only possess a Bible, not a Quran. Pl. Second Opp. at 1, 26, 33. Plaintiff also submitted an internal, command level order to prison staff that expressly allows inmates under lockdown to possess a Bible, in addition to three other books, but does not expressly mention any other religious texts. Pl. Second Opp. Ex. 1.

While "inmates enjoy no constitutional or legal right to receive religious materials at government expense," the Equal Protection Clause of the Fourteenth Amendment prevents Defendants from granting differential access to religious materials based on the inmates' faith. *Lloud v. City of New York*, 43 F. Supp. 3d 254, 265 (S.D.N.Y. 2014). In light of Plaintiff's *pro se* status, the Court construes the second opposition brief as bringing a claim pursuant to section 1983 that, as a Muslim, Plaintiff's Equal Protection rights are being violated because the Defendants do not give him the same protected access to the Quran as Christian inmates are given to the Bible.

Although the command level order does not guarantee inmates a Bible, it provides protected access to a Bible above that provided to other religious texts. Courts in this District have found that equal protection claims can proceed based on similarly worded orders. *Flores v. City of New York*, 21-CV-1680, 2022 WL 4705949, at *28 (S.D.N.Y. Aug. 8, 2022), *report and*

16

*recommendation adopted*, 2022 WL 4592892 (Sept. 30, 2022) (holding that the plaintiff plausibly alleged a violation of the Equal Protection clause based on a command level order listing the Bible as the only religious text inmates were expressly allowed to possess).  Because the Court finds that Mr. Thompson has plausibly alleged that the command level order violates his constitutional right to equal protection, Defendant's motion to dismiss is denied as to Plaintiff's claim that he was denied access to a Quran.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED except as to Plaintiff's deliberate indifference claim premised on the failure to provide constitutionally-adequate medical treatment for his alleged mpox infection, his religious liberty claims premised on the denial of access to religious congregations, and his equal protection claim premised on the denial of access to the Quran, as to which the motion is DENIED.   Plaintiff's motions for summary judgment are DENIED without prejudice.  The Clerk of Court is further directed to close the open motion at docket entry 41 and to terminate Defendants Warden Renee and Capt. Carter from the docket.

The Court declines to issue a certificate of appealability as to the portions of this opinion granting Defendants' motion to dismiss.  Petitioner has not made a substantial showing of a denial of a federal right pursuant to 28 U.S.C. § 2253(c), and appellate review is therefore not warranted.  *See Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to reinstate the referral to Magistrate Judge Moses for general pretrial management and for the preparation of a report and recommendation on any dispositive motions at docket entry 23.  The Clerk of Court is further ordered to mail a copy of this order to Mr. Thompson, who is proceeding *pro se*, and to note the mailing on the docket.

**SO ORDERED.**

**Date:  March 17, 2023**
**       New York, NY**

**VALERIE CAPRONI**
**United States District Judge**